CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

June 17, 2026

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| Hernan Navarro, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:25-cv-00789 |
| | ) | |
| C. Dotson *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Hernan Navarro, an incarcerated individual proceeding *pro se*, filed this action under 42 U.S.C. § 1983, complaining about alleged differential treatment of him based on his status as a Virginia Department of Corrections ("VDOC") inmate under a contract between VDOC and the United States Virgin Islands ("USVI"), pursuant to which VDOC agreed to house inmates from the USVI at its facilities. Navarro complains that inmates from the USVI, such as him, are restricted to be designated to Security Level 4 or higher facilities under VDOC Operating Policy ("OP") 830.1. He contends that his rights have been violated because he cannot be transferred to a Security Level 3 institution no matter how well he behaves.

This matter comes before the court on Defendants' motion to dismiss Navarro's complaint. (Dkt. 16.) For the reasons explained below, the court will grant the motion and dismiss this action.

1

## I.    Background

The court has taken all facts alleged in Navarro's complaint, not the legal conclusions, as true at this stage.  *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020).

In 2011, Navarro, a United States citizen, was transferred from a prison in the USVI to Wallens Ridge State Prison.  (Dkt. 1 ¶ 12.)  VDOC had entered into a contract to house inmates from the USVI under the Interstate Corrections Compact.  (Dkt. 1-2 at 7–22.)  In 2015, in this Court, Navarro sued former VDOC Director Harold Clarke and others about the conditions of his confinement.  (*Id.* ¶ 14; Dkt. 19 ¶ 11 (citing Civil Action No. 7:15-cv-000635).)  The lawsuit was resolved through mediation. (Dkt. 1-2 at 23–24.)  The agreed order resulting from that mediation required VDOC to "afford to inmates housed pursuant to the Correctional Services Contract between the VDOC and [USVI] Department of Justice the process applied in VDOC classification policies and procedures, as may be amended by the VDOC, applicable to other inmates housed by the VDOC, including an annual review."  (*Id.* at 24.)  Also under the agreed order, Navarro was transferred to Keen Mountain Correctional Center, where he was housed "for about eight years," but he was "never given an annual review."  (Dkt. 1 ¶¶ 15–16.)[1]  He was "told by the Counselor, Unit Manager, and Warden that they [could] not put [Navarro] in for a transfer to a level three VDOC facility because of O.P. 830.1 at page five."  (*Id.* ¶ 15.)

VDOC OP 830.1 Part V governs "Contract Inmate Annual Review Requirements." (Dkt. 1-2 at 32.)   Part V(A) requires counselors to "conduct annual reviews for contract inmates[,] i.e., Virgin Islands and Hawaii[,] within 30 days after the Annual Review Date, the

---

[1] Navarro has specified that this case "is not about annual reviews.  It is about that O.P. 8.301(V) policy."  (Dkt. 21 at 1.)

date the inmate was received into the Virginia DOC." (*Id.*) Part V(C)(4) requires the counselor to document completion of the annual review process and specifies "Institution Assignment: Assign to Red Onion State Prison, Wallens Ridge State Prison, or Keen Mountain Correctional Facility, *only*." (*Id.*) (emphasis added). According to a VDOC document attached to Navarro's complaint, Keen Mountain is a Security Level 4 facility, Wallens Ridge is a Security Level 5 facility, and Red Onion is a Security Level 5, 6, and S facility. (*Id.* at 43.) VDOC OP 830.1(V)(C)(4) is thus the source of Navarro's complaint that USVI inmates cannot be housed in a Level 3 facility.

In or about June 2017, according to the complaint, VDOC OP 830.1, Institutional Classification Management, was amended to add this specific provision,[2] which Navarro says is "an unconstitutional policy which discriminates against Virgin Islands inmates." (Dkt. 1 ¶ 17.) According to Navarro, under this policy, a "Virgin Island inmate[] can only ask at his annual review to [go to a facility higher] up in Security Level and not down . . . and no matter how many years he is charge free he can only go up in Security level." (*Id.* ¶ 27.)

In June or July 2025, Navarro was transferred to a Security Level 5 facility, Wallens Ridge State Prison, because of a pending disciplinary violation for a 103b charge, which was subsequently dismissed.[3] (Dkt. 1 ¶ 19.) Defendant Chadwick Dotson, who was VDOC's director at the time of Navarro's transfer to Wallens Ridge State Prison, emailed Navarro (and presumably all other inmates) to announce the commencement of Virginia model correctional

---

[2] Navarro claims this amendment was made in "retaliation" for his filing of the 2015 lawsuit, (Dkt. 1 ¶ 17), but any retaliation claim under § 1983 is time-barred. *See Cunningham v. Loudoun Cnty. Sheriff's Off.*, No. 1:25-cv-01588, 2026 WL 950494, at *7 (E.D. Va. Apr. 8, 2026).

[3] Navarro did complain in administrative grievances about his remaining at Wallens Ridge State Prison after his charge was dismissed, (Dkt. 21-1 at 1), but that is not the subject of this action. He was at Wallens Ridge State Prison when he filed this suit, and he remains housed there.

3

facilities, which have "better food [and] college courses." (*Id.* ¶ 20.) According to Navarro, the email stated that the model facilities would be "open to good behaving VDOC model inmates." (*Id.*) But USVI inmates, according to Navarro, are prohibited from participating in the "incentive programs" because they "will never be good enough . . . no matter how good [they] behave." (*Id.*) Navarro claims that VDOC OP 830.1, Part V prevents him and other USVI inmates from placing into a model facility. (*Id.* ¶¶ 20-21.) This disparity has caused Navarro emotional distress. (*Id.* ¶ 21.)

Navarro's complaint does not identify actions or inactions of any particular Defendant to this action other than Defendant Dotson, and he does not specify the capacity in which he sues Defendants. The complaint does not allege that Navarro should be classified as a Level 3 inmate.[4] Rather, his suit is essentially a challenge to the "system" or the governing regulations on the theory that he could, at some future point, become eligible for transfer to a Security Level 3 facility but may be foreclosed from that possibility, because of the limitation that VDOC will house the USVI inmates only at Security Level 4 or higher facilities. He

---

[4] Navarro's opposition to the motion to dismiss makes it clear that he is currently housed at Security Level 5 institution. (Dkt. 19 ¶ 7 (stating that he is currently at a security level 5 facility) and ¶ 13 (contending that at "one point" prior in the eight years he was housed at Keen Mountain, he had points corresponding to Security Level 3).) Navarro explains that inmates must work down through the security levels while remaining charge-free for a year and completing programming. (Dkt. 19 ¶¶ 6–8). Thus, he argues that if he could move down to Level 4 and then have another period of good behavior, then he could score at Level 3 in the future. But the scoring is only one factor that goes into VDOC's determinations about where to house each inmate, and inmates have no entitlement to be housed at any particular security level or institution. *Alexander v. Ely*, No. 7:20-cv-00766, 2022 WL 15524969, at \*4 (W.D. Va. Oct. 27, 2022), *aff'd*, No. 23-6027, 2023 WL 3675913 (4th Cir. May 26, 2023) ("It is also well established that an inmate has no constitutional right to be housed in a particular prison or type of prison."). A score in the Level 3 range does not mandate housing at a Level 3 facility. *Id.* (rejecting inmate's claim that Level 3 score mandated housing in a Level 3 facility and noting that many discretionary factors impact institutional assignments). Nonetheless, Navarro does contend that once a recent overturned disciplinary conviction for a 139 charge is removed from his points, that he would score as a Level 3. (Dkt. 21-1 at 4). He also, however, included documentation from VDOC that indicates that points from the original overturned conviction, which was for a 103b charge, are not included in his security level score and that other reasons were given to him for his ongoing placement at a Level 5 facility. (Dkt. 21-1 at 3.) In any event, Navarro does not claim that he could currently request to be transferred to a Level 3 facility.

contends that the challenged regulation violates his rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution. He also alleges that Defendants violated Virginia Code § 53.1-32.1 and VDOC OPs, and that Defendant Dotson violated the terms of the 2017 Agreed Order. Navarro seeks injunctive, declaratory, and monetary relief.

## II.    Standard of Review

"[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state[] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 (2007)). In making this evaluation, the court accepts all well-pled facts as true, but it need not assume the truth of any "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement," as these are not well-pled facts. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

Pleadings filed by *pro se* litigants must be construed liberally. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of *pro se* complaints are not, however, without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

A *pro se* complaint must still "state a claim to relief that is plausible on its face." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

### III.    Analysis

#### 1. Claims Against Defendants in Their Official Capacities

As noted above, Navarro did not specify in which capacity he sued Defendants, so the court has assumed he asserts his claims against each Defendant in both their official and individual capacities.  Navarro's official capacity claims for monetary damages fail because a suit against a state official in their official capacity is "no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  "Thus, since a state cannot be a defendant, plaintiffs may not recover damages against state officials sued in their official capacities for claims asserted under 42 U.S.C. § 1983." *Hunter v. Virginia State Bar*, 786 F. Supp. 2d 1107, 1111 (E.D. Va. 2011).  Additionally, whereas § 1983 "permits suit against 'every person' who deprives an individual of his or her rights under color of state law, neither States nor state officials acting in their official capacities constitute 'persons' within the meaning of the statute when sued for monetary relief." *Fauconier v. Clarke*, 966 F.3d 265, 279–80 (4th Cir. 2020).

In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court recognized an exception to Eleventh Amendment immunity that allows individuals to seek prospective equitable relief against state officials to prevent ongoing violations of federal law. *Biggs v. N.C. Dep't of Pub. Safety*, 953 F.3d 236, 242 (4th Cir. 2020).  To fall within this exception, a plaintiff must allege "an ongoing violation of federal law" and seek relief that is "properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (cleaned

6

up).  But, "the exception is narrow: It applies only to prospective relief, [and it] does not permit judgments against state officers declaring that they violated federal law in the past . . .." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).  Further, "conjecture regarding discrete future events . . . is insufficient" to establish "a continuing governmental practice or an ongoing violation."  *DeBauche v. Trani*, 191 F.3d 499, 505 (4th Cir. 1999).

Here, even assuming that Navarro's request for injunctive relief is prospective and that at least one of the Defendants could be properly charged with enforcement, his claims still must be dismissed because Navarro has admitted he does not currently score to be housed at Level 3 as explained above.  Navarro thus has failed to present facts indicating any alleged *ongoing* violation of law such that the *Ex parte Young* exception could apply.  *See Cotto v. Campbell*, 126 F.4th 761, 771 (1st Cir. 2025), *cert. denied*, 223 L. Ed. 2d 504 (Jan. 12, 2026) (noting that the "[t]he pivotal question [under *Ex parte Young*] is whether the relief 'serves directly to bring an end to a *present* violation of federal law' because a court cannot issue injunctive relief, no matter how 'prospective' it may appear, without such a violation") (emphasis added).  Navarro attempts to leverage the situations of other inmates who he claims are USVI inmates scoring at Level 3.  (*See, e.g.*, Dkt. 19 ¶ 4.)  But Navarro cannot assert the claims of other inmates. *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166 (1972) ("Appellee has standing to seek redress for injuries done to him, but may not seek redress for injuries done to others.").

Therefore, any official capacity claims that could be asserted by Navarro fail to establish a plausible claim of entitlement to relief.

### 2.    Claims Against Defendants in Their Individual Capacities

As stated above, Navarro's challenge is most accurately described as a challenge to the system and/or applicable regulations.  Such a claim is not properly asserted against Defendants in their individual capacities under 42 U.S.C. § 1983, which is a vehicle for holding individual "persons" liable for their violations of constitutional or federal law.  Liability under § 1983 is often described as personal, meaning that a defendant can only be held liable for his or her actions or inactions.  *See, e.g.*, *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).  A plaintiff cannot survive a motion to dismiss challenge with "unadorned, the-defendant-unlawfully-harmed me accusations and legal conclusions." *Langford v. Joyner*, 62 F.4th 122, 125 (4th Cir. 2023) (affirming dismissal of inmate's suit that lumped defendants together) (cleaned up).  A complaint under § 1983 must "make clear exactly who is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him . . . as distinguished from collective allegations." *Robbins v. Okla. Ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (holding that a § 1983 complaint must allege factual detail about each defendant's personal involvement).  If a plaintiff has not alleged any personal connection between a defendant and a denial of constitutional rights, the claim against that defendant must fail.  *See Iqbal*, 556 U.S. at 676.  Here, Navarro has not alleged any personal connection between a defendant and a denial of due process or equal protection. Accordingly, he has failed to state a claim against any defendant.  Navarro cannot simply challenge the "system" under Section 1983 individual capacity claims.

The Fourth Circuit recently reiterated this in *Rice v. Adams*, 172 F.4th 428 (4th Cir. 2026), explaining that, in the § 1983 context, the motion to dismiss standard demands that a plaintiff "plead that *each* Government-official defendant, through the official's *own individual actions*, has violated the Constitution." *Id.* at 432 (emphasis in original) (quoting *Iqbal*, 556 U.S. at 676). It continues: "The allegations must be particular enough to allow one to infer what each defendant did and knew. Lumping defendants together won't do. . . . We require [] 'specific factual allegations for each defendant,' because only such allegations provide 'fair notice to *that* defendant of the plaintiff's claim and underlying factual support." *Id.* Because of the lack of specific personal allegations, the Fourth Circuit dismissed the case in which an inmate had died from opioid withdrawal because the complaint did "not allow [the courts] to connect any named officer to any act or omission" that supported the claim. *Id.* at 433. It characterized this flaw as "fatal." *Id.*

Likewise, Navarro here does not allege any specific actions or inactions of any Defendants. Six of the seven named Defendants are not mentioned at all except for the conclusory allegation that they are each "legally responsible for [] operations" and the welfare of inmates. (Dkt. 1 ¶¶ 4-10.) No actions or inactions of these Defendants are stated, so the claims against them must fail.

Navarro's complaint does refer to Defendant Dotson, the former Director of VDOC, but Navarro does not identify any particular acts or inactions of Dotson that would indicate any plausible claim of entitlement to relief. As with the other named Defendants, Navarro seeks to hold Dotson responsible solely because he was in charge. This is not permitted under § 1983, for the doctrine of *respondeat superior* or vicarious liability is "inapplicable" to § 1983

actions.  *Iqbal*, 556 U.S. at 676.  Government officials "may be liable in their individual capacities only for their personal wrongdoing or supervisory actions that violated constitutional norms."  *Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022).  The mere assertion that Dotson was responsible for the operation of the VDOC and the facilities in its jurisdiction is insufficient to support a claim of supervisory liability under § 1983.  *See, e.g.*, *Wilkins v. Montgomery*, 751 F.3d 214, 227 (4th Cir. 2014) ("Appellant argues that Appellee had an overarching duty to keep the patients at CSH safe. While this may be true, it does not relieve Appellant of the burden of showing a pervasive risk of harm that Appellee knew about, actually or constructively—a burden that Appellant has not met.") (internal citations omitted).

Navarro mentions Dotson sent out an email related to the announcement of new model facilities with better conditions.  (Dkt. 1 ¶ 20.)  According to Navarro, this email made him feel sad because USVI inmates could never be housed at a model facility.  (*Id.* ¶ 21.)  But the simple act of sending of an email announcing new facilities does not support a claim that Dotson violated Navarro's due process or equal protection rights.  Navarro also mentions that the VDOC Director was responsible for amending the regulations in 2017 that limit USVI inmates to certain level facilities.  (*Id.* ¶ 27.)  He contends the VDOC Director made this change to retaliate against Navarro for his 2015 litigation.  (*Id.*)  But Dotson was not the VDOC Director in 2017,[5] so this conclusory, unsubstantiated, and time-barred allegation does not state any plausible claim of entitlement to relief.  Finally, Navarro's complaint states

---

[5] Harold W. Clarke was the VDOC Director in 2017.  (Dkt. 17 at 2 n.3.)  Dotson served as the VDOC director from 2023 through 2026.  (Dkt. 17 at 1 n.1, 2 n.3.)

without elaboration that Dotson "violated the District Court[']s Order." (Dkt. 1 ¶ 25.)  He does not explain what Dotson did or did not do to allegedly violate the court's order, which was attached to the complaint as Exhibit 3.  (Dkt. 1-2 at 23–25.)  But even by Navarro's own allegations, he was transferred to Keen Mountain under the order.[6]  Navarro has specified that the case is not about conducting annual reviews, (Dkt. 21 at 1), and he has not alleged that Dotson was responsible for conducting his annual reviews.  As to Navarro's contention that the 2017 amendment to VDOC OP 830.1 violated the terms of the order, this court lacks jurisdiction over such a time-barred claim, (Dkt. 1-2 at 25 (order explicitly retains jurisdiction to enforce the agreement for only 75 days after its execution in 2017), and Dotson was not personally involved as he was not the VDOC director in 2017.  Thus, Navarro's complaint fails to state a § 1983 claim against Dotson in his individual capacity.

In sum, Navarro's complaint does not indicate a plausible claim of entitlement to relief against any of the individuals named as Defendants in their individual capacities under 42 U.S.C. § 1983.  Without a viable federal claim pending, the court declines to exercise any supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367(c)(3), such as Navarro's contention that Virginia Code § 53.1-32.1 was violated, that VDOC breached the contract between it and the USVI, or that VDOC violated its own regulations.[7]

---

[6] The order does not mandate that Navarro stay at Keen Mountain indefinitely, and he was housed there for eight years by his own account.  (Dkt. 1 ¶ 16.)

[7] Alleged violations of VDOC Operating Procedures are not sufficient to give rise to § 1983 liability.  *Ralston v. Clarke*, No. 7:23-cv-00716, 2025 WL 2212085, at *6 (W.D. Va. Aug. 4, 2025), *aff'd*, No. 25-6715, 2026 WL 595580 (4th Cir. Mar. 3, 2026) ("As discussed, violations of deadlines or procedures set forth in VDOC disciplinary procedural regulations do not rise to the level of a federal constitutional violation actionable under § 1983.").

Finally, Navarro filed a motion seeking to amend his complaint to add reference to a proposed bill pending before the Governor.  (Dkt. 22.)   For the reasons explained by Defendants in their opposition at Dkt. 25 at 3-4, the court finds that this amendment would be futile and would not alter the court's analysis herein.  Accordingly, the court **DENIES** this motion.

### IV.    Conclusion and Order

For the reasons set forth above, the court **GRANTS** Defendants' motion to dismiss, (Dkt. 16), and **DENIES** Navarro's motion seeking to amend his complaint (Dkt. 22).  The Clerk is **DIRECTED** to close this case.

The Clerk shall mail a copy of this Order to Navarro.

**ENTERED** this 17th day of June, 2026.

_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE